**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | **COMPLAINT** |
| CITY OF MERIDEN, | ) | |
| CONNECTICUT and | ) | |
| CITY OF MERIDEN | ) | |
| PLANNING COMMISSION | ) | |
| Defendants. | ) | |
| | ) | |

The United States of America, by its undersigned attorneys, files this Complaint and alleges:

### Introduction

1. The United States brings this civil action for declaratory and injunctive relief against the City of Meriden, Connecticut (the "City" or "Meriden") and the City of Meriden Planning Commission, under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-2000cc-5. This civil action is based on the City's treatment of Omar Islamic Center (the "Center"), an Islamic nonprofit corporation, in its effort to establish a place of worship in Meriden, and the City's treatment of religious assemblies and institutions compared to nonreligious assemblies and institutions throughout the City.

2. Since its founding in 2018, the Center has sought to provide a religious home for Muslims living in Meriden and the surrounding area. In December 2018, the Omar Islamic Center obtained a commitment from the owner of 999 Research Parkway in Meriden (the "Property") to donate that property to the Center for the purpose of establishing a mosque and

community center there.  The Property is ideally suited to the Center's goal of establishing a mosque and community center in central Connecticut because of its size and location.

3. The Property is located in Meriden's M-4 Planned Industrial zoning district, where religious assemblies are required to obtain a "special exception permit" from the Meriden Planning Commission in order to operate.  On March 13, 2019, the Planning Commission denied the Center's special exception permit application.

4. Nonreligious institutional, public, and nonprofit uses are permitted as a matter of right in the M-4 zone and are not required to obtain a special exception permit.

5. The City's zoning ordinance also requires special exception permits for places of worship, or prohibits them entirely, in at least eight other zoning districts where comparable nonreligious places of assembly and institutions are permitted as a matter of right.

6. The City of Meriden and the Meriden Planning Commission have violated RLUIPA by: (a) imposing an unjustified substantial burden on the Center's exercise of religion by denying the Center's request for a special exception permit, 42 U.S.C. § 2000cc(a)(1); (b) requiring religious assemblies, but not comparable nonreligious assemblies and institutions, to obtain discretionary special exception permits in order to operate in the M-4 zoning district,  in violation of RLUIPA's equal terms provision, *id.* § 2000cc(b)(1); and (c) prohibiting religious assemblies or requiring them to obtain discretionary special exception permits in eight other zoning districts, while not placing the same restrictions on comparable nonreligious assemblies and institutions, in violation of RLUIPA's equal terms provision, *id.*

### Jurisdiction, Venue, and Parties

7. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper under 28 U.S.C. § 1391(b) because the actions giving rise to this action occurred in the District of Connecticut.

9. The United States has the authority to bring this action under 42 U.S.C. § 2000cc-2(f).

10. Defendant the City of Meriden, a municipality in New Haven County, Connecticut, is governed by a twelve-person elected City Council, which has all legislative and fiscal power in Meriden.  Meriden City Charter § C3-1.

11. Defendant the Meriden Planning Commission comprises five members who are recommended by the Mayor and approved by the City Council.  Meriden City Code § 6-20; Charter § C3-3(J).  The City's Zoning Board of Appeals considers special exception permit applications in the majority of zoning districts, and the rest are handled by the Planning Commission.  *See* Zoning Ordinance ("ZO") § 73.

12. The City of Meriden is a "government" as defined by RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(i).

13. The Meriden Planning Commission is a "government" as defined by RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(ii).

14. The City is home to approximately 50 churches and two mosques.  Its sole synagogue recently merged with a synagogue in nearby Middletown.

**Facts**

***Omar Islamic Center and its Need for Place of Worship***

15. Omar Islamic Center, Inc., an organization of Muslims who live and work in Meriden, Middletown, and other nearby towns, was incorporated under Connecticut laws in 2018.  The Center is a "religious assembly or institution," under RLUIPA. 42 U.S.C. §§ 2000cc(a)(1), (b)(l).

16. Until August 2019, including when the Center applied to use the Property in Meriden, the Center did not have a permanent place to worship.  Instead, its members worshipped in private as the organization searched for a suitable location.

17. In August 2019, after being denied zoning approval in Meriden, the Center leased a small property located at 24 Broad Street in downtown Middletown ("24 Broad Street") (see Fig. 1).



*Figure 1: 24 Broad Street, Middletown, CT*

18. The space at 24 Broad Street is inadequate to meet the Center's needs and limits its ability to conduct religious activities and carry out its core religious mission.

4

19. The site is too small to hold well-attended prayer services; Ramadan services; religious rituals for births, marriages, and funerals; community engagement events; or religious school classes large and frequent enough to meet demand.

20. There are also no dedicated parking spots for the Center, and the Center's imam has had to interrupt prayer services to ask attendees to move their cars at the request of nearby businesses.

21. The 24 Broad Street space is situated adjacent to a convenience store whose patrons often loiter and smoke cigarettes by the mosque entrance dedicated for women and children, making community members feel uncomfortable.

22. All of these factors deter potential congregants and prevent worshippers from easily dropping in for midday prayer services.

23. The inadequacy of the Center's current mosque space undermines the Center's religious mission by hindering its members' ability to assemble for religious services, other religious activities, religious education, and community events.  This inhibits the Center's ability to grow and maintain a cohesive religious community.

### *The Property*

24. In or about December 2018, the trustees of the property at 999 Research Parkway in Meriden agreed to donate the Property to the Center for use as a mosque and community center, contingent upon the Center receiving zoning approval for the use.



*Figure 2: 999 Research Parkway, Meriden, CT   (source: Meriden Record-Journal, myrecordjournal.com)*

25. The Property is a 3.65-acre site featuring a two-story, 31,000 sq. ft. building and a 110-space parking lot (see Fig. 2).  It is located in the southeastern corner of Meriden, in the M-4 Planned Industrial zone.  The Property once housed a fiber optics equipment manufacturing company, but it has now been vacant for approximately 15 years.

26. The Property is ideal to fulfill the Center's goal of establishing a mosque and community center that could fully meet the religious and community needs of its community.  Its location just off the I-91 transportation corridor and large parking lot would provide members with easy access for the five daily prayers and other events and services.  The first floor of the building is large enough to provide ample space for daily prayer services, Ramadan services, rituals for weddings, funerals, and births, and dedicated classrooms for the religious school.  The Center planned to lease the second floor of the building to community members as office space.

27. The Center has a "property interest" or "a contract or option to acquire such an interest" in the Property within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(5).

6

28. The Center's efforts to establish a place of worship at the Property constitutes "religious exercise" within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(7).

29. The Center's effort to establish a place of worship at the Property, which would involve the renovation of the interior of the building and the transfer of funds, purchase of materials, and use of interstate highways, and the City's and Planning Commission's actions described in this Complaint, which prevent the establishment of a place of worship, "would affect commerce . . . among the several States" within the meaning of RLUIPA, 42 U.S.C. § 2000cc(a)(2)(B).

### *The M-4 Zoning District*

30. As stated above, the Property (999 Research Parkway) is located in the M-4 Planned Industrial zoning district.  The City's zoning ordinance states that the purpose of the M-4 zone is "to allow for the creation of an integrated industrial development in which buildings, structures and facilities may be constructed and used for different and mixed uses, to include use for industrial, institutional, public, municipal, office and commercial."  ZO § 32(A).

31. A diverse mix of uses is permitted by right in the M-4 zone, including:

(a)  Manufacturing, production and fabrication.
(b)  Offices, banks, institutional, public and municipal buildings . . . .
(c)  Warehouses and distribution facilities.
(d)  Research and development facilities.
(e)  Hotels, motels and convention centers.
(f)  Shops and stores and service establishments, limited to the following: . . . restaurants, theaters, clinics, cocktail lounges, public and private substations and transportation terminals, provided that not more than 20% in the aggregate of the land area of any one M-4 District shall be used for such purposes.
(g)  Child-care provider – Class I.
(h)  Child-care provider – Class II . . . .

ZO § 32(B)(1).

32. In addition, uses permitted in the C-1 Central Commercial District that are not identified as permitted uses in the M-4 may nevertheless be allowed by special exception permit. *Id.* § 32(B)(2)(a).  This includes religious assemblies, which are allowed by special exception permit in the C-1 zone.  *Id.* § 23(B)(2).

### *Zoning of Places of Worship and Nonreligious Assemblies and Institutions*

33. Meriden's zoning ordinance permits religious assemblies by right in three of the City's 25 zoning districts; requires them to obtain a discretionary special exception permit in 13 others; and prohibits them in the remaining nine districts.

34. While the zoning ordinance permits religious assemblies in the Planned Residential Development District (the "PRD"), Planned Development District (the "PDD"), and Transit Oriented District (the "TOD"), there are restrictions in each of these zones that make it difficult or impossible for religious assemblies like the Center to operate in them.

35. The PRD district applies only to tracts of land of at least five acres that are "under single ownership and zoned for 'multiple-family residential' uses only," and religious assemblies are permitted only "to the extent they are designed and intended to serve the residents of the planned residential district."  ZO §§ 34(D), (E)(2).

36. The PDD applies only "to a parcel or group of contiguous parcels totaling a minimum of 200 acres" that "[a]t the time of application for such zoning designation," is "in single ownership."  ZO § 39(D)(1)(a).  All of the land in a PDD zone is "considered as a single unit of development for the purpose of site planning and utilities," although "individual lots created after the adoption of this district may be separately owned."  *Id.* § 39(A).

37. The TOD consists of five sub-districts and has its own detailed set of zoning regulations.  Religious intuitions are permitted by right but must comply with architectural,

design, setback, parking, and site plan requirements and must submit a comprehensive zoning application to the Director of Development and Enforcement for discretionary approval.  ZO § 27(R)(1)(c).

38. Depending on the zoning district, special exception permits are issued by the Zoning Board of Appeals (the "ZBA") or the Planning Commission through a process described in § 73. ZO § 73.  In the M-4, special exception permits are issued by the Planning Commission.

39. The special exception permit regulations direct the ZBA or Planning Commission to "take into consideration the health, safety and welfare of the public, in general, and the immediate neighborhood" when evaluating a special permit application.  ZO § 73(B).  The ZBA or Planning Commission may "prescribe reasonable conditions and safeguards" to achieve three enumerated goals: harmony with the existing development; conformity to the site plan objectives; and conformance to all requirements of the underlying district.  *Id.*

40. The ZBA or Planning Commission must hold a public hearing on all special exception applications.  ZO § 73(C).

41. In the M-4 zone, uses permitted in the C-1 zone are allowed by special permit, "provided that the City Council also approves and that the Planning Commission shall find [the use] will not tend to depreciate the value of the property in the neighborhood or be otherwise detrimental or aggravating to the neighborhood or its residents or alter the neighborhood's essential characteristics."  ZO § 32(B)(2)(a).  The M-4 regulations do not specify how or when City Council approval is to be obtained.

42. Meriden's zoning ordinance is a "land use regulation" within the meaning of RLUIPA, 42 U.S.C. § 2000cc-5(5).

43. For purposes of RLUIPA, the special exception permit process is a system of regulations that permits the City to make an "individualized assessment" regarding the zoning applicant's property and proposed uses for the property.  42 U.S.C. § 2000cc(a)(2)(C).

### *The Center's Special Exception Permit Application*

44. In January 2019, the Center applied to the Meriden Planning Commission for a special exception permit so that it could operate a religious assembly at the Property.  The Center proposed to use the first floor of the Property building for religious worship, religious education, and community events, and to lease the second floor as commercial office space.

45. The Center did not propose to make any changes to the site beyond re-striping the parking lot to include more accessible parking spaces.

46. The Center's application addressed the applicable criteria under the zoning ordinance, focusing primarily on the issue of "harmony with development."  The Center noted that the mosque would occupy and maintain a building that had been vacant for years, thereby improving the value of neighboring properties and the area as a whole.  The Center also attached real estate data showing that property values tend to rise in areas near mosques.  Given that the Center did not seek to make any changes to the site plan or exterior of the building, it argued that the mosque would be harmonious with development and meet all site plan requirements.

47. Prior to the February 13, 2019 public hearing on the application, representatives from the Center, including its president and imam, met with Meriden's Director of Planning, Renata Bertotti, and other zoning officials.  At first, the Center did not receive any negative feedback about its application.  But in the days leading up to the public hearing, Ms. Bertotti expressed pessimism about the Center's chances.

48. Ms. Bertotti prepared a staff report for the Planning Commission dated February 7, 2019.  In the report, Ms. Bertotti specifically advised the Planning Commission to "consider the 'equal terms' provision" of RLUIPA and stated that it would be consistent with RLUIPA to approve the Center's application because institutional uses and public buildings are permitted by right in the M-4 zone.

49. Ms. Bertotti's staff report also noted that the Center's proposed use would "not negatively impact the area streets, intersections, or neighborhoods."

50. Ms. Bertotti's report advised that the Planning Commission "should not act on this application until the approval is obtained by the City Council," and that the Center's application should therefore "be tabled until the Planning Commission's next meeting date."

51. Based on conversations with Ms. Bertotti, the Center understood that the City Council and the Planning Commission would both need to approve the application.

52. The Planning Commission first considered the Center's application at its February 13, 2019 public hearing.  Counsel for the Center explained the Center's proposed use of the Property and addressed the relevant factors under the zoning ordinance.  He also explained the Center's plan to lease the second floor of the building as office space, which he noted would create tax revenue for the City.

53. The commissioners asked numerous questions of the Center's attorney, nearly all of which focused on the issue of tax revenue for the City and the Center's status as a tax-exempt 501(c)(3) nonprofit.

54. Commissioners questioned the Center's ability to lease the proposed office space and asked whether there was a way to ensure tax revenue from the second floor.

55. A commissioner noted that in 2010, the Property generated $74,000 in tax revenue for the City; that even sitting vacant for years, it had generated $66,800 in taxes in 2017; and that a lot of rental income would be required to make up for that loss.

56. A commissioner also worried that the mosque would grow and need to take over the second floor, depriving the City of all tax revenue from the Property.

57. In addition, a commissioner raised the concern that a mosque would not fit in with the surrounding uses and suggested the mosque could go elsewhere in Meriden.

58. One member of the public commented in opposition to the proposal, echoing the concerns about property tax revenue.

59. After hearing these comments, the Commission's chairman, Enrico Buccilli, gave a statement advocating for the denial of the Center's application.  He explained that the proposal was not, in his mind, "congruent with the surrounding land use" and would not "augment the primary use of the land" because it would diminish the non-residential tax base.  He also asserted that there were other places in Meriden for a place of worship to locate and argued that the Center should explore those options instead.

60. The Planning Commission closed the public hearing and agreed to table the issue until its March 2019 meeting so that it could be considered by the City Council, as advised by Planning Director Bertotti.

61. Six days later, on February 19, 2019, Ms. Bertotti sent an email to the members of the Planning Commission explaining that the City's Corporation Counsel disagreed with her interpretation of the zoning regulations, and "contend[ed] that under his interpretation the City Council could not decide until the Planning Commission has acted [on the Center's application] first."

62. Ms. Bertotti also stated in the email that she had informed the Center of this change in procedure, and noted that the Center was hoping to receive a decision soon.

63. On March 8, 2019, Planning Commission Chairman Enrico Buccilli sent an email to an alternate member of the Commission, explaining that the Commission would "discuss and then act on" the Center's proposal at the March meeting because "the council kicked it back to us."

64. Ms. Bertotti apologetically informed the Center that there would be no City Council hearing, after all.  She told the Center that the City's attorney did not want their application to go before the City Council.  She also said that she did not think the application was likely to be granted.

65. On March 13, 2019, the Planning Commission resumed its hearing on the Center's zoning application.  The Commission did not hear further public comment or permit argument from the Center's attorney.

66. Ms. Bertotti again advised the Commission of its obligation to treat the Center's application the same way it would treat a secular application.

67. Chairman Buccilli delivered additional remarks, largely reiterating his earlier arguments against the Center's application.

68. A commissioner asked whether places of worship were allowed elsewhere in Meriden, or whether a special exception permit was always required.  Planning Director Bertotti responded that she was not sure, but that she believed places of worship were permitted uses in other districts.

69. The Planning Commission then voted unanimously to deny the Center's application. The Commission gave the following reasons for the denial:

1.  Primary purpose of M-4 is for industrial, office and commercial;

2.  The proposed use does not meet the special exception criteria because it is not congruent with the surrounding land uses and it does not augment the primary use of land;

3.  Not in line with the POCD [Plan of Conservation and Development] because it reduces commercial and industrial spaces.

70.  The Planning Commission's first finding mischaracterizes the purpose of the M-4 district as stated in Meriden's zoning ordinance, which is "to allow for the creation of an integrated industrial development in which buildings, structures and facilities may be constructed and used for different and mixed uses, to include use for industrial, institutional, public, municipal, office and commercial."  ZO § 32(A).

71.  To that end, Meriden permits numerous uses as a matter of right in the M-4 zone that, contrary to the Planning Commission's statement, are not "industrial, office and commercial," and may also be tax-exempt, including nonreligious assemblies like institutions, public buildings, municipal buildings, and theaters.  Furthermore, other nonreligious assembly uses like convention centers, hotels, and restaurants are also permitted by right in the M-4.

72.  In addition, the Planning Commission's finding that the Center's proposed use "does not augment the primary use of land" and is "[n]ot in line with the POCD" imposes conditions that are not required by the zoning ordinance.  The zoning ordinance directed the Commission to consider the "health, safety and welfare of the public, in general, and the immediate neighborhood"; the goals of "harmony with the existing development"; "conformity to the site plan objectives"; "conformance to all requirements of the underlying district"; and whether the use will "tend to depreciate the value of the property in the neighborhood or be otherwise detrimental or aggravating . . . or alter the neighborhood's essential characteristics."  *See supra*

14

¶¶ 34, 36.  By imposing extra requirements on the Center's application, the Commission held it to an improperly high standard and failed to correctly apply the zoning criteria.

73. Thus, the Planning Commission denied the Center's application without a legitimate interest to justify its decision, and it cannot demonstrate that it used the least restrictive means to advance any purported interest.

74. In her February 7, 2019 staff report to the Planning Commission, Ms. Bertotti specifically advised the Planning Commission to "consider the 'equal terms' provision" of RLUIPA and stated it would be consistent with RLUIPA to approve the Center's application because institutional uses and public buildings are permitted by right in the M-4 zone.  Ms. Bertotti also pointed out that the Center's proposed use would "not negatively impact the area streets, intersections, or neighborhoods" of the M-4.  Despite this advice, the Planning Commission unanimously voted to reject the Center's application for a special exception permit.

75. The City and Planning Commission treated the Center on less favorable terms than similarly situated nonreligious places of assembly and institutions by denying the Center's special exception permit application.

76. At all times relevant to the allegations in this Complaint, the City lacked sufficient procedures or practices to ensure compliance with RLUIPA, including, but not limited to, adequate RLUIPA training for City officials involved in religious land use determinations, and procedures to address complaints raising RLUIPA considerations.

77. On April 2, 2019, the Center filed suit in the United States District Court for the District of Connecticut against the City and Planning Commission, alleging violations of RLUIPA, as well as claims under the U.S. Constitution and Connecticut law.  *See Omar Islamic*

*Center v. City of Meriden & Planning Commission of the City of Meriden*, Docket No. 3:19-cv-488 (MPS).

### The Denial's Impact on the Center

78. The City's and Planning Commission's actions described in this Complaint have created considerable delay, expense, and uncertainty for the Center in its efforts to establish a place of worship in the City.

79. Because the Planning Commission denied the Center's special permit application, the Center cannot establish a place of worship at the Property.  Instead, the Center is operating out of the much smaller and less suitable property at 24 Broad Street.

80. Despite its efforts to do so, the Center has been unable to find an alternative property suitable for its religious needs.

81. The donation of the Property is contingent on the Center obtaining the appropriate zoning approvals.  While the donors have been patient with the Center as it has entered the legal process, they have informed the Center that they will not wait indefinitely.  Therefore, without zoning approvals, the Center may soon lose the Property forever.

82. Without the donated Property, the Center estimates that it would take at least a decade to raise the funds necessary to build or purchase a comparable property, causing considerable delay, expense, and uncertainty for the Center.

### Meriden's Unequal Treatment of Places of Worship in Other Zoning Districts

83. Meriden's unequal treatment of religious assemblies is not limited to the M-4 zone. Chart 1 describes the treatment of religious assemblies compared to nonreligious assemblies in other districts:

Chart 1: Assembly Uses in Selected Meriden Zoning Districts

| | C-1, C-1-A, C-2, C-3 | M-1 | M-3 | M-4 | RDD | NCDD |
|---|---|---|---|---|---|---|
| Conf. ctr. hotel, conf. hotel/facility, convention ctr.[1] | P | P[2] | | P | P[3] | S |
| Libraries, galleries, museums | P | | | S | | P |
| **Places of worship** | S | | | S | | S |
| Public uses/buildings | | | | P | | P |
| Recreation Center[4] | S | | P | A | | S |
| Theaters | P | | | P | | P |
| Universities, colleges | S | | | | P | |

P: permitted by right; S: special exception required; A: accessory use.

84. As detailed in Chart 1, religious assemblies are allowed by only by special exception permit in the C-1, C-1-A, C-2, and C-3 commercial zones, the M-4 industrial zone, and the Neighborhood Commercial Design District (the "NCDD"), and religious assemblies are

[1] A "conference center hotel" is defined by the zoning ordinance as a "facility used in part for business or professional conferences and seminars and offering a minimum of 100 rooms for transient lodging accommodations and providing additional services such as restaurants, meeting rooms and recreation facilities. A building on site or a portion of a building must be designed to accommodate 300 or more people in assembly. Such place of assembly shall be in addition to restaurant and recreation facilities." A "conference hotel" is defined as a "building or part thereof that offers a minimum of 75 rooms for transient lodging accommodations with or without kitchenettes and is located within ¼ mile of an approved conference center hotel." "Conference facility" and "convention center" are not defined. ZO § 7(B).

[2] "Conference center hotels" are permitted in the M-1 zone if they are "located on a minimum ten-acre site." ZO § 29(B)(1)(g). Conference hotels are permitted without restriction. ZO § 29(B)(1)(j).

[3] The minimum lot size in the RDD is eight acres. ZO § 36(D)(1).

[4] "Recreation Center" is defined as a "private, quasi-public or public facility designed to house passive and active recreation facilities, including athletics, swimming, games, meeting rooms and accessory food services and equipment rental, and designed to be generally available to the public at minimal cost." ZO § 7(B).

prohibited in the M-1 and M-3 industrial zones and in the Regional Development District (the "RDD").

85. By contrast, as detailed in Chart 1, comparable nonreligious assemblies and institutions are permitted by right in all nine of these zones:

- Convention and conference facilities are permitted by right in the C-1, C-1-A, C-2, C-3, M-1, M-4, and RDD zones;

- Libraries, art galleries, and museums are permitted by right in the C-1, C-1-A, C-2, C-3, NCDD zones;

- Theaters are permitted by right in  the C-1, C-1-A, C-2, C-3, M-4 and NCDD zones;

- Public or municipal uses and buildings are permitted by right in the M-4 and NCDD zones;

- Universities are permitted in the RDD zone; and

- Recreation centers, which include passive and active recreation facilities such as athletics, swimming, games, and meeting rooms are permitted by right in the M-3 zone.

86. The zoning impacts of these nonreligious assemblies and institutions identified in paragraph 78, above, are similar to those of religious assemblies, in that they all involve groups of people coming and going at specified times, parking impacts, and have similar effects on community health and safety.   Many of these nonreligious assemblies and institutions do not

generate tax revenue. Yet religious assemblies must either acquire a special permit to operate in these zones, or they are prohibited entirely.

87. The City's zoning ordinance treats religious institutions on less favorable terms than similarly situated nonreligious places of assembly and institutions.

## COUNT I: RLUIPA – Substantial Burden

88. The allegations above are incorporated by reference.

89. The City's and Planning Commission's actions described in this Complaint constitute the imposition or implementation of a land use regulation that imposes a substantial burden on the Center's religious exercise, which burden is not in furtherance of a compelling governmental interest and is not the least restrictive means of furthering such an interest, in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(l).

## COUNT II: RLUIPA – Equal Terms

90. The allegations above are incorporated by reference.

91. The City's zoning regulations for the M-4 zoning district and the City's and Planning Commission's actions described in this Complaint with respect to the Omar Islamic Center's special exception permit application to establish a place of worship in the M-4 zone constitute the imposition or implementation of a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with nonreligious assemblies or institutions in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l).

## COUNT III: RLUIPA – Equal Terms

92. The allegations above are incorporated by reference.

93. The City's zoning regulations in the C-1, C-1-A, C-2, C-3, M-1, M-3, RDD, and NCDD districts constitute the imposition or implementation of a land use regulation in a manner that treats religious assemblies or institutions on less than equal terms with nonreligious assemblies or institutions in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l).

## PRAYER FOR RELIEF

**WHEREFORE,** the United States prays that this Court enter an order that:

A. Declares that the actions of the City of Meriden and the Meriden Planning Commission, as alleged herein, were in violation of RLUIPA;

B. Declares that the City of Meriden's and the Meriden Planning Commission's policies, practices and zoning regulations of religious institutions, as alleged herein, violate RLUIPA;

C. Enjoins the City of Meriden and the Meriden Planning Commission, their officers, employees, agents, successors, and all other persons in concert or participation with them, from:

    i. Imposing a substantial burden on the religious exercise of the Center and its members that is not narrowly tailored to further a compelling governmental interest; and

    ii. Treating the Center and its members on less than equal terms with nonreligious assemblies or institutions;

D. Enjoins the City of Meriden and the Meriden Planning Commission, their officers, employees, agents, successors and all other persons in concert or participation with them, from enforcing its zoning ordinances in an unequal manner against any religious assembly or institution in districts where nonreligious places of assembly or institutions

20

are permitted as of right or by special exception permit, or from enforcing the provisions of the zoning ordinance that permits places of worship only as a special use rather than a by-right use in the M-4 district;

E. Requires the City of Meriden and the Meriden Planning Commission, their officers, employees, agents, successors, and all other persons in concert or participation with them, to:

    i.   Take such actions as may be necessary to restore, as nearly as practicable, the Center and its members to the position they would have been in but for the City's and Planning Commission's unlawful conduct, including, but not limited to, granting such approvals necessary to allow the Center to use the Property as a place of worship; and

    ii.   Take such actions as may be necessary to prevent the recurrence of such unlawful conduct in the future, including, but not limited to:

1. Ensuring that religious assemblies or institutions are not treated on less than equal terms with nonreligious assemblies or institutions;

2. Revising its code, charter, and zoning ordinance as necessary to ensure that religious assemblies or institutions are not treated on less than equal terms with nonreligious assemblies or institutions;

3. Providing RLUIPA training to its personnel and city officials;

4. Establishing procedures to address complaints of RLUIPA violations; and

5. Maintaining records and submitting reports relating to RLUIPA compliance; and

F.   Awards such additional relief as the interests of justice may require, together with the

United States' costs and disbursements in this action.

Respectfully submitted,

WILLIAM P. BARR
Attorney General

JOHN H. DURHAM
United States Attorney
District of Connecticut

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

/s/ David C. Nelson
JOHN B. HUGHES (ct05289)
Chief, Civil Division
DAVID C. NELSON (ct25640)
Assistant United States Attorney
United States Attorney's Office
District of Connecticut
157 Church Street, 25th Floor
New Haven, CT 06437
Phone: (203) 821-3700
Facsimile: (313) 226-3271
John.Hughes@usdoj.gov
David.C.Nelson@usdoj.gov

/s/ Eliza H. Simon
R. TAMAR HAGLER
Deputy Chief
RYAN G. LEE (WI 1041468)
RLUIPA Coordinator
ELIZA H. SIMON (phv10470)
KATHERINE A. RAIMONDO (phv10469)
Trial Attorneys
United States Department of Justice
Civil Rights Division
Four Constitution Square
150 M Street NE
Washington, DC 20530
Phone: (202) 305-6785
Facsimile: (202) 514-1116
Eliza.Simon@usdoj.gov
Katherine.Raimondo@usdoj.gov